IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

Civil Action No. _____ 19-CV-113 - F

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN -7  AM 10: 00

STEPHAN HARRIS, CLERK
CHEYENNE

VERMILION ENERGY USA LLC,

    Plaintiff,

v.

NCS MULTISTAGE, LLC

and

BERKLEY NATIONAL INSURANCE COMPANY

    Defendants.

---

## COMPLAINT

---

Plaintiff Vermilion Energy USA LLC ("Vermilion") brings this action against Defendants NCS Multistage, LLC ("NCS") and Berkley National Insurance Company ("Berkley") and for its claim alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Vermilion is a limited liability company organized under the laws of Delaware with its principal place of business located at 600 17th Street, Suite 1900S, Denver, Colorado, 80202. Vermilion is engaged in the business of exploration, development, and operation of oil and gas wells and is engaged in the production of oil and gas.

2.    NCS is a limited liability company organized under the laws of Texas with its principal place of business located at 19450 State Highway 249, Suite 200, Houston, Texas 77070. NCS is an independent technology and services company specializing in multistage oil and gas well completions.

4581837.3

3.      Berkley is an insurance company organized under the laws of Iowa with its principal place of business located at Naperville, Illinois.  Berkley is engaged in the business of providing property and casualty insurance coverage.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

5.      This Court has personal jurisdiction over NCS because NCS transacted business in Wyoming and committed the acts and omissions alleged herein in Wyoming.

6.      This Court has personal jurisdiction over Berkley because Berkley transacted business in Wyoming by issuing an insurance policy covering transactions in Wyoming as well as, the acts and omissions alleged herein in Wyoming.

7.      Venue is proper in District of Wyoming pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

### The Master Service Agreement

8.      Vermilion hired NCS to supervise the operation of NCS's sliding frac sleeves during completion operations on Vermilion's Christensen 15-1H Well ("15-1H Well") with a surface hole location in Section 15, Township 40 North, Range 63 West in Niobrara County, Wyoming pursuant to the terms of a Master Service Agreement ("Agreement"). *See* Ex. 1, Agreement Preamble.

9.      Pursuant to the Agreement, NCS obtained a policy of insurance from Berkley providing coverage for its obligations and liabilities associated with activities at the 15-1H Well

("Policy"). This Policy, under the circumstances set forth herein, also provides coverage to Vermilion as an additional insured.

10.     Pursuant to the Agreement, NCS represented "that it has adequate equipment in good working order, and fully trained personnel capable of efficiently operating such equipment and performing services for [Vermilion]." *See id.*

11.     The Agreement includes mutual anti-indemnity clauses ("Anti-Indemnity Clauses") whereby each party agrees to "agrees to release, protect, defend, indemnify and hold harmless" the other party from and against all claims, demands, and causes of action without regard the negligence or fault of the other party. *See id.* §§ 3.2, 3.3.

12.     Further, the Agreement contains a provision declaring that it shall be governed and construed in accordance with the laws of the State of Colorado ("Choice of Law Clause"). *See id.* § 8.3

13.     Under the circumstances described in this Complaint, anti-indemnity clauses such as those included in sections 3.2 and 3.3 of the Agreement are against public policy and are void and unenforceable. Specifically, Wyoming's Statute § 30-1-131 declares that "[a]ll agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water . . . which purport to indemnify the indemnitee against loss or liability for damages . . . are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee for any loss or liability for his own negligence."

14.     In addition, the Wyoming Supreme Court has declined to enforce choice of law provisions purporting to evade Wyoming statutes enacted pursuant to public policy as well as insurance and other contract provisions intended to thwart Wyoming's anti-indemnity statute.

## NCS's Negligence Resulting in Damage to the 15-1H Well

15.     Pursuant to Vermilion's instructions, NCS was responsible for supervising the operation of NCS's sliding frac sleeves during completion operations on the 15-1H Well. The 15-1H Well is a horizontal well and equipped with NCS's coiled-tubing operated, single-function sliding frac sleeves. To operate the sliding frac sleeves during completion operation, coiled-tubing is run into the well with a specialized bottom hole assembly ("BHA") connected to the coil tubing. This specialized BHA is used to open each sliding frac sleeve in sequence, starting at the toe and working back towards the heel of a well.

16.     This sliding frac sleeve procedure was performed on the 15-1H Well. The 15-1H Well had 62 NCS sliding frac sleeves, with sliding frac sleeve number 1 at the toe and sliding frac sleeve number 62 at the heel of the well. This procedure requires 24 hours per day supervision by NCS.

17.     NCS conducted its operations on the 15-1H Well on a twenty-four-hour basis by assigning two NCS supervisors to the wellsite on alternating twelve-hour shifts.

18.     According to NCS's standard operating procedure, the supervisor should make certain that the BHA is in "running mode" when pushing through the sliding frac sleeve to ensure that the BHA does not open a sliding frac sleeve out of sequential order.

19.     Instead of following this standard operating procedure, in March 2018, an NCS supervisor working on the 15-1H Well failed to ensure that the BHA was in "running mode." Instead, the BHA was in "setting mode" and on the frac sleeve, resulting in the premature opening of sliding frac sleeve 59.

20.     Sliding frac sleeve 59 is a single function sliding frac sleeve, meaning that once it is opened, it cannot be closed and no completion operations can be conducted beyond it in the

horizontal wellbore utilizing the NCS multistage system that had been installed throughout the entire length of the wellbore, which is approximately 1.5 miles.

21.     As a result of NCS's error, nearly all of 15-1H Well (*i.e.,* sliding frac sleeves 1 through 58 out of 62) was rendered inaccessible which resulted in significant property damage, remedial work and other losses to Vermilion estimated to exceed three million dollars ($3,000,000).

22.     Following the commission of NCS's error, several NCS employees stated repeatedly that NCS had made a mistake, an error, and a bad call.

23.     Upon information and belief, Berkley has failed, refused and/or otherwise indicated that it will fail and refuse to provide coverage for the damages and losses caused by NCS at the 15-1H Well.

### FIRST CLAIM FOR RELIEF

#### Negligence
#### (NCS)

24.     Vermilion incorporates by reference its prior allegations as if fully set forth herein.

25.     NCS owed a duty to Vermilion to perform its services at the 15-1H Well in accordance with applicable standards of care (including its own standard operating procedures), industry standards, and in a manner that would not harm or damage Vermilion.

26.      NCS breached its duties to Vermilion by failing to carry out its services in a non-negligent manner as set forth in this Complaint.

27.     As a result of NCS's negligence, Vermilion sustained significant property damage as set forth in this Complaint in an amount to be proven at trial, but which is currently estimated to exceed three million dollars.

## SECOND CLAIM FOR RELIEF

### Negligent Supervision
### (NCS)

28.     Vermilion incorporates by reference its prior allegations as if fully set forth

herein.

29.     NCS owed Vermilion a duty to exercise reasonable care in the supervision of its

employees and vendors performing services at the 15-1H Well, including a duty to prevent an

unreasonable risk of harm.

30.     NCS breached its duty to exercise reasonable care in performing services at the

15-1H Well by failing to properly supervise its employees and vendors as set forth in this

Complaint, resulting in significant property damage to the 15-1H Well.

31.     The supervisor and others who failed to carry out NCS's work on the 15-1H Well

for Vermilion in a non-negligent manner were acting within the course and scope of their

employment with NCS.

32.     As a direct and proximate result of NCS's negligent supervision, Vermilion

sustained significant property damage as set forth in this Complaint in an amount to be proven at

trial, but which is currently estimated to exceed three million dollars.

## THIRD CLAIM FOR RELIEF

### Breach of Contract
### (NCS)

33.     Vermilion incorporates by reference its prior allegations as if fully set forth

herein.

34.     In the Agreement, NCS made promises and representations to Vermilion regarding services to be performed and regarding the quality of those services relating to work on the 15-1H Well.

35.     NCS also represented in the Agreement that it had fully trained personnel capable of efficiently operating equipment and performing services for Vermilion.

36.     NCS materially breached the Agreement by failing to employ capable personnel and failing to perform its services in a good and workmanlike manner or in accordance with generally accepted industry practices.

37.     NCS further breached the Agreement by failing to fulfill its indemnity obligations pursuant to the Agreement.

38.     As a result of NCS's material breach of the Agreement, Vermilion sustained damages in an amount to be proven at trial, but which is currently estimated to exceed three million dollars.

## FOURTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Workmanship
### (NCS)

39.     Vermilion incorporates by reference its prior allegations as if fully set forth herein.

40.     The Agreement contains an implied warranty that NCS will perform the required work in a skillful, careful, diligent, and workmanlike manner.

41.     NCS breached this implied warranty by failing to employ capable personnel and failing to perform its services in a good and workmanlike manner or in accordance with generally accepted industry practices.

42.     As a result of NCS's breach of this implied warranty, Vermilion sustained damages in an amount to be proven at trial, but which is currently estimated to exceed three million dollars.

## FIFTH CLAIM FOR RELIEF

### Declaratory Judgment
### (NCS)

43.     Vermilion incorporates by reference its prior allegations as if fully set forth herein.

44.     There is an actual controversy over whether NCS breached its duties and obligations under the Agreement and whether the Anti-Indemnity and Choice of Law Clauses are against public policy, void, and unenforceable.

45.     The Court should declare that the Anti-Indemnity and Choice of Law Clauses in the Agreement are against public policy, void, and unenforceable, and clarify any other uncertainty regarding whether NCS is liable to Vermilion for the damage it caused at the 15-1H Well.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract
### (Berkley)

46.     Vermilion incorporates by reference its prior allegations as if fully set forth herein.

47.     Upon information and belief, the insurance policy procured by NCS from Berkley provides coverage for property damage and losses incurred at the 15-1H Well.

48.     Upon information and belief, under the circumstances set forth herein, Vermilion is an additional insured under the insurance policy procured by NCS from Berkley and is entitled to coverage for the property damage and losses incurred at the 15-1H Well.

49.     Upon information and belief, Berkley has failed or refused to acknowledge, accept, or undertake its obligations under the insurance policy.

50.     As a result of Berkley's material breach of the policy, Vermilion has sustained damages in an amount to be proven at trial, but which is currently estimated to exceed three million dollars.

## SEVENTH CLAIM FOR RELIEF

### Anticipatory Breach of Contract
### (Berkley)

51.     Vermilion incorporates by reference its prior allegations as if fully set forth herein.

52.     Upon information and belief, the insurance policy procured by NCS from Berkley provides coverage for property damage and losses incurred at the 15-1H Well.

53.     Upon information and belief, under the circumstances set forth herein, Vermilion is an additional insured under the insurance policy procured by NCS from Berkley and is entitled to coverage for the property damage and losses incurred at the 15-1H Well.

54.     Upon information and belief, Berkley has stated, acted, and manifested an intention to refuse to acknowledge, accept, and undertake its obligations under the insurance policy.

55.     As a result of Berkley's anticipatory material breach of the policy, Vermilion has sustained damages in an amount to be proven at trial, but which is currently estimated to exceed three million dollars.

## EIGHTH CLAIM FOR RELIEF

### Declaratory Judgment
### (NCS)

56.     Vermilion incorporates by reference its prior allegations as if fully set forth

herein.

57.     There is an actual controversy over whether Berkley has breached or

anticipatorily breached its duties and obligations under the insurance policy and whether the

Anti-Indemnity Clauses are against public policy, voice, and unenforceable.

58.     The Court should declare that Berkley is obligated to provide coverage for the

property damage and other losses caused by Vermilion at the 15-1H Well.

### PRAYER FOR RELIEF

WHEREFORE, Vermilion requests the following relief:

1.      a declaration that the Anti-Indemnity and Choice of Law Clauses are against

public policy, void, and unenforceable;

2.      a declaration that the policy of insurance issued by Berkley provides coverage for

the property damage and other losses at the 15-1H Well;

3.      an award of compensatory and other damages in an amount to be determined at

trial but which are currently estimated to exceed three million dollars;

4.      an award of pre and post-judgment interest; and

5.      an award of such other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED this 6th day of June, 2019.

R. Kirk Mueller
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone: 303.892.9400
Facsimile:  303.893.1379
Email:  kirk.mueller@dgslaw.com

*Counsel for Plaintiff*
*Vermilion Energy USA LLC*